## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE No. 1:20-cr-00042 |
| | : | |
| | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| PRINCETON FLAGG-GARRETT, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM**
August 3, 2020

## I.  Introduction.

Currently pending is Defendant Princeton Flagg-Garrett's Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145(b).  Flagg-Garrett suggests that he should be released from federal pretrial detention given the COVID-19 pandemic and the conditions at the Dauphin County Prison.  For the reasons that follow, we will deny Flagg-Garrett's motion.

## II.  Background and Procedural History.

On February 19, 2020, the Grand Jury returned an indictment charging Flagg-Garrett with two counts of bank fraud in violation of 18 U.S.C. § 1344, one count of aggravated identity theft in violation of 18 U.S.C. § 1028A, and one count of obstruction of correspondence in violation of 18 U.S.C. § 1702.  On February

24, 2020, Flagg-Garrett appeared before the undersigned for an initial appearance and arraignment.  After counsel was appointed to represent him, Flagg-Garrett pleaded not guilty. *Docs. 11, 12.*

The probation office prepared a pretrial services report noting that an interview with Flagg-Garrett was not conducted because Flagg-Garrett had been incarcerated at the Dauphin County Prison ("DCP") since October 17, 2019, in lieu of $1,100,000 bail.  That report also noted that Franklin County had lodged a detainer against Flagg-Garrett.  The pretrial services report disclosed that Flagg-Garrett has a lengthy criminal history including convictions for numerous theft offenses, possession of instruments of a crime, access device fraud, trespass, criminal mischief, forgery, terroristic threats, driving without a license, receiving stolen property, and false identification to a law enforcement officer.  The report also disclosed that Flagg-Garrett has numerous charges pending against him in Dauphin, Cumberland, and York Counties.  Those charges include numerous theft charges as well as numerous other charges including charges for unlawful use of a computer, identify theft, forgery, and receiving stolen property.

The United States filed a motion for detention, and Flagg-Garrett did not contest detention.  We detained Flagg-Garrett concluding that he is a flight risk and a danger to the community. *Doc. 15* at 2.  Flagg-Garrett's trial is currently scheduled for September 8, 2020. *Doc. 25.*

On June 22, 2020, Flagg-Garrett, who is currently detained at the DCP, filed a motion seeking release from federal detention.  He suggests that given his medical conditions, he is at heightened risk from COVID-19.  He asserts that he has sickle cell trait and asthma.  He also asserts that he is an admitted addict. Flagg-Garrett contends that if released, he will live in Harrisburg with Tahzia L. Caughman, who will act as a third-party custodian.  He also asserts that he will submit to home confinement with location monitoring and other conditions of release.

On June 29, 2020, the United States filed a brief in opposition to Flagg-Garrett's motion arguing that the court should dismiss the motion for release as moot.  The United States argues that given the numerous other charges against Flagg-Garrett in at least three other jurisdictions, the high bail associated with those charges, and the detainer from Franklin County, even if this court ordered Flagg-Garrett released from federal detention, he would remain in custody as to those other state charges.

We held a hearing on Flagg-Garrett's motion on July 29, 2020.  At that hearing, Flagg-Garrett testified about his other pending charges.  He understands that even if this court releases him from federal detention, he will remain detained unless he can obtain release from his county charges.  According to Flagg-Garrett, when Judge Tully of the Dauphin County Court of Common Pleas last denied him

release, he said he may reconsider if Flagg-Garrett was released as to the federal charges.  Thus, if this court releases him from federal detention, Flagg-Garrett's intent is to attempt to then obtain release from his county charges.

Flagg-Garrett also testified about his family ties to the Harrisburg area, and he testified that if released, he would work and he would live in Harrisburg with Tahzia L. Caughman, who would act as a third-party custodian.

Flagg-Garrett further testified about the conditions in the DCP, which has had numerous inmates test positive for COVID-19 and which is on lockdown.  The DCP is testing inmates and staff weekly for COVID-19.  Flagg-Garrett has been tested three times for COVID-19, all of which tests were negative.

Flagg-Garrett also testified about his medical conditions—narcolepsy, sleep apnea, sickle cell trait, and asthma.  Although he characterized his asthma as severe, he has not presented any medical evidence to support that assertion. According to Flagg-Garrett, during his incarceration at the DCP during the last nine and half months, he has had two or three asthma attacks.  He also testified that he twice has been given nebulizer treatments for his asthma at the DCP. According to Flagg-Garrett he uses a CPAP machine for his sleep apena, but he does not have such a machine in the DCP.  He did not present any evidence, however, that he requested the use of a CPAP machine in the DCP.  Flagg-Garrett also mentioned in passing that he has narcolepsy, but he did not elaborate on that.

Finally, he testified that he has sickle cell trait.  According to Flagg-Garrett, sickle cell trait is the same as sickle cell disease only less severe.  He did not present any medical evidence to support that assertion.

Flagg-Garrett's proposed third-party custodian—Tahzia Caughman—also testified at the hearing.  Caughman testified that she lives with her mother and her step-brother in a home in Harrisburg.  Caughman as well as her mother and step-brother all work.  Caughman also testified that she understands what being a third-party custodian entails, and she agrees to act as a third-party custodian for Flagg-Garrett.

During the time that she has known Flagg-Garrett, Caughman has not witnessed him having an asthma attack.  She testified that there were times when Flagg-Garrett would have body aches, pain, and headaches, which were not accounted for by physical activity and which she attributed to him having the sickle cell trait.  She testified that Flagg-Garrett could uses his CPAP machine at her home.

Although she testified that she does not have concerns for her safety if Flagg-Garrett lives with her, on cross-examination, Caughman admitted that when she previously lived with Flagg-Garrett, he was occasionally verbally and physically abusive to her.  On cross-examination, the United States showed that although Caughman testified that she was familiar with the charges against Flagg-

Garrett, she did not know all the details of those charges.  The United States also

highlighted on cross-examination of Caughman that Flagg-Garrett allegedly

committed the crimes with which he is charged in this case in the apartment he was

then sharing with Caughman.

## III.  Discussion.

At the outset, we reject the United States' contention that Flagg-Garrett's

motion is moot.  Given the detainer lodged against Flagg-Garrett and the numerous

other charges against him, we agree that even if we were to lift the detention order

in this case, Flagg-Garrett would not be immediately released.  But as Flagg-

Garrett testified at the hearing, lifting the federal detention order would clear the

way for him to attempt convince the state authorities to release him.  Thus, we

conclude that Flagg-Garrett's motion is not moot just because he has a detainer and

other state charges pending.[1]

"The Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3150, provides a

comprehensive scheme governing pretrial-release decisions." *Reese v. Warden

Philadelphia FDC*, 904 F.3d 244, 247 (3d Cir. 2018).  "[T]he Act requires a

---

[1]  We note that at the time of Flagg-Garrett's initial appearance and arraignment,
the United States apparently did not think that the detainer and other state charges
rendered the issue of federal detention moot given that the United States filed a
motion for detention even though the detainer was outstanding and the other
charges were pending.

judicial officer to determine whether an arrestee shall be detained." *United States v. Salerno*, 481 U.S. 739, 742 (1987) (citing 18 U.S.C. § 3141(a)).  "The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community." *United States v. Cox*, No. 2:19-cr-00271-RFB-VCF, 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020).

"If, after a hearing pursuant to the provisions of [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).  But "[t]he judicial officer is not given unbridled discretion in making the detention determination." *Salerno*, 481 U.S. at 742–43.  Rather, the Act requires the judicial officer to consider: (1) the nature and circumstance of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether he or she was on probation, parole, or other release pending further proceedings at the time of the offense or arrest;

7

and (4) the danger posed to any person or the community if the defendant were
released. 18 U.S.C. § 3142(g). Further, in certain circumstances, the Act provides
a rebuttable presumption that no condition or combination of conditions will
reasonably assure the appearance of the defendant for trial or the safety of the
community. *See* 18 U.S.C. § 3142(e)(2), (3).

Here, in his motion, Flagg-Garrett cites to 18 U.S.C. § 3145(b), which
provides:

> If a person is ordered detained by a magistrate judge, or by a
> person other than a judge of a court having original jurisdiction
> over the offense and other than a Federal appellate court, the
> person may file, with the court having original jurisdiction over
> the offense, a motion for revocation or amendment of the order.
> The motion shall be determined promptly.

The motion was referred to the undersigned, but Flagg-Garrett has not presented a
sufficient reason for the undersigned to reconsider the decision to detain him.

Flagg-Garrett does not specifically seek release under 18 U.S.C. § 3142(i),
but because he suggests that he should be released based on COVID-19 concerns
and this court has addressed motions seeking release based on COVID-19 under
§ 3142(i), we will consider Flagg-Garrett's motion under that section as well.
Section 3142 concerns release or detention of a defendant pending trial, and after
setting forth what a detention order must contain, 18 U.S.C. § 3142(i) provides:

> The judicial officer may, by subsequent order, permit the
> temporary release of the person, in the custody of a United
> States marshal or another appropriate person, to the extent that

8

the judicial officer determines such release to be necessary for
preparation of the person's defense or for another compelling
reason.

The defendant bears the burden of showing that he is entitled to release under

§ 3142(i). *Cox*, 2020 WL 1491180, at *2.

Although "[t]he Court is mindful of the unprecedented magnitude of the

COVID-19 pandemic and the extremely serious health risks it presents, particularly

within the jail and prison setting[,]" "a defendant should not be entitled to

temporary release under § 3142(i) based solely on generalized COVID-19 fears

and speculation." *United States v. Boatwright*, No. 2:19-cr-00301-GMN-DJA,

2020 WL 1639855, at *5 (D. Nev. Apr. 2, 2020); *cf United States v. Raia*, 954 F.3d

594, 597 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently

justify compassionate release, especially considering BOP's statutory role, and its

extensive and professional efforts to curtail the virus's spread."); *United States v.*

*Roeder*, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020) (reversing

district court's denial of defendant's motion to postpone his self-surrender date in

light of the COVID-19 pandemic, but noting that "the existence of a widespread

health risk is not, without more, a sufficient reason for every individual subject to a

properly imposed federal sentence of imprisonment to avoid or substantially delay

reporting for that sentence," and stating that it is "imperative" that the courts

"continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief").

Rather, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary." *Boatwright*, 2020 WL 1639855, at *5; *Cox*, 2020 WL 1491180, at *2 (stating that "whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case"); *United States v. Croley*, No. 1:19-cr-0454 (TJM), 2020 WL 1696061, at *1 (N.D.N.Y. Apr. 6, 2020) ("While courts have recently used their authority to release a defendant during this dire period upon a showing that such defendant faces a particularized and heightened danger, or need, a generalized argument in favor of release because of the ongoing pandemic is insufficient.").

In determining whether a defendant should be released under § 3142(i) in light of the COVID-19 pandemic, many courts have analyzed the following factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also Boatwright*, 2020 WL 1639855, at *5 (relying on *Clark*

and analyzing those same factors); *United States v. Dodd*, No. 20-cr-0016, 2020

WL 1547419, at *3 (D. Minn. Apr. 1, 2020) (same).  Magistrate judges in this

district have also found the *Clark* factors helpful. *See e.g., United States v.*

*Andrewsh,* No. 5:19-mj-00087, 2020 WL 1904473, at *4 (M.D. Pa. Apr. 17, 2020)

(Saporito, M.J.); *United States v. McIntyre*, No. 19-cr-95, 2020 WL 1891837, at *4

(M.D. Pa. Apr. 16, 2020) (Carlson, M.J.); *United States v. Neal*, No. 4:17-cr-255-1,

2020 WL 1891874, at *3 (M.D. Pa. Apr. 16, 2020) (Arbuckle, M.J.); *United States*

*v. Veras*, No. 3:19-cr-010, 2020 WL 1675975, at *6 (M.D. Pa. Apr. 6, 2020)

(Mehalchick, M.J.).

More recently, a modified set of factors, which explicitly includes the actual

conditions in the facility where the defendant is being held, has been used by the

United Stated District Court of the Eastern District of Michigan. *See United States*

*v. McGlory*, No. 2:17-CR-20489, 2020 WL 1905719, at *2 (E.D. Mich. Apr. 17,

2020).  Those factors are:

> (1) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.);
> (2) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment);
> (3) whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community;
> (4) the original grounds for the defendant's pretrial detention.

*Id.* Mindful that all the circumstances of a particular case must be analyzed, we conclude that the above factors, although not the exclusive factors that may be relevant in any given case, are a helpful starting point in analyzing whether release is warranted under § 3142(i).

Here, after weighing the above factors and considering the arguments presented by the parties, we conclude that release is not warranted in this case.

### A.  The nature, seriousness, and specificity of Flagg-Garrett's stated COVID-19 concerns.

Flagg-Garrett suggests that his medical condition places him at a heightened risk of suffering severe illness or dying from COVID-19.  "Although most people who become sick from COVID-19 develop only mild or moderate respiratory symptoms and recover with no medical intervention, a minority of cases lead to serious illness that can result in hospitalization or death." *United States v. Ortiz*, No. 1:18-cr-00134, 2020 WL 1904478, at *2 (M.D. Pa. Apr. 17, 2020) (citing *Q&A on Coronavirus (COVID-19): What Are the Symptoms of Coronavirus*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Apr. 14, 2020)).  People with certain underlying medical conditions are at heightened risk of suffering severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions (last visited July 30, 2020).  "Compelling reasons may exist [for

release] where the defendant's serious medical conditions warrant release." *United States v. Marte*, No. 19-cr-795 (SHS), 2020 WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020).

Some of Flagg-Garrett's medical conditions, most importantly his asthma, could place Flagg-Garrett at heightened risk of serious complications should he contract COVID-19.  But Flagg-Garrett has not presented medical evidence showing the severity of his conditions.  Thus, it is unclear to what degree Flagg-Garrett is at heightened risk.  Nevertheless, Flagg-Garrett's medical conditions weigh in favor of release.

### B.  The conditions at the Dauphin County Prison.

Flagg-Garrett is concerned that he is in danger of contracting COVID-19 at the Dauphin County Prison.  His concern is not without a basis:

> According to Pennsylvania's Department of Health, a primary strategy for minimizing the spread of COVID-19 is "social distancing."  This means avoiding large gatherings of people and keeping at least six feet away from other individuals.  It goes without saying that prisons generally are crowded spaces and therefore are less than conducive to the practice of social distancing.  During this rapidly evolving public health emergency, there are many valid concerns about the possibility of contagion in prisons.

*Roeder*, 2020 WL 1545872, at *2 (footnotes omitted).  And give that many recent cases of COVID-19 at the DCP have been diagnosed, Flagg-Garrett's concern is

understandable, and we share that concern.  Yet, from Flagg-Garrett's testimony it

is clear that the DCP is taking steps to test for COVID-19, and steps to try to stop

its spread within the prison.  In sum, while not ideal, the conditions at the Dauphin

County Prison weigh only slightly in favor of release.


### C.  Whether Conditions of Release Can be Imposed to Mitigate COVID-19 risks to Flagg-Garrett and to the Community.

Because Flagg-Garrett suggests that the risk of contracting COVID-19 in the

DCP is a compelling reason necessitating his release, his "proposed temporary

release plan should be tailored to mitigate [his] overall COVID-19 risks, not

exacerbate them." *Clark*, 2020 WL 1446895, at *6.  "Releasing someone from jail

will distance him or her from the people in the jail." *United States v. Hamlin*, No.

17-cr-175-PP, 2020 WL 1703848, at *6 (E.D. Wis. Apr. 8, 2020).  But "[i]t will

not guarantee that he or she is distanced from people outside the jail upon release."

*Id*.

Flagg-Garrett offers Tahzia Caughman as a third-party custodian.  It is

reasonable to assume that, if Corbitt lives with Caughman and her mother and step-

brother, as he proposes to do, he will be exposed to fewer individuals (and

therefore fewer individuals who may have COVID-19) than he would if he

remained in the DCP.  Nevertheless, Flagg-Garrett's risk of contracting COVID-19

outside the prison is tied to his compliance with the social-distancing and other

measures meant to slow the spread of the virus.  And Flagg-Garrett's "extensive criminal history establishes that he has 'been unable or unwilling to remain law-abiding for most of his adult life;' hence, the Court 'has no reason to believe that he would suddenly become compliant now.'" *United States v. Smoot*, No. 2:19-cr-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) (quoting *Clark*, 2020 WL 1446895, at *7).  Thus, Flagg-Garrett's lengthy criminal history casts doubt on whether he will comply with social-distancing and other measures meant to slow the spread of COVID-19.  And if he does not comply with such measures, he would be at risk of contracting and then spreading the virus.  Further, "[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties." *Veras*, 2020 WL 1675975, at *6.

Although Flagg-Garrett asserts that he is willing to be subject to electronic monitoring, it is not clear that electronic monitoring is a viable option in this case. There is a limited supply of location monitoring devices. *See United States v Kahn*, No. 19-80169-CR, 2020 WL 1582279, at *7 (S.D. Fla. Apr. 2, 2020) ("Probation Officer Grice noted the shortage of electronic location monitoring devices."); *United States v. Howard*, No. 1:19-cr-00255-TWP-MJD, 2020 WL 1599693, at *2 (S.D. Ind. Apr. 1, 2020) ("The COVID-19 pandemic has reduced the availability of pretrial supervision conditions to mitigate the risk to the community and the

resources of the United States Probation Office are presently limited. The number of officers available to provide supervision and the availability of GPS and other home detention equipment is strained. The Probation Office's limited resources should be reserved for the release of those in pretrial detainment whose circumstances have truly changed—such as those who are elderly or at high risk for the virus.").

Moreover, setting up electronic monitoring entails risks to the probation staff. *See United States v. Aiad-Toss,* No. 4:19-cr-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) ("Moreover, releasing Defendant to home detention and electronic monitoring creates its own risks and undue burden on pretrial services. Location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing."). "The fact that a probation officer might be at risk in effectuating a defendant's release on location monitoring may not, standing alone, be a reason not to release a defendant." *Hamlin*, 2020 WL 1703848, at *7. But it may be an appropriate consideration in cases, like this one, where it is a highly questionable whether electronic monitoring would be effective.

We are not convinced that conditions of release can be imposed that would mitigate the risks of COVID-19 to Flagg-Garrett and to the community.  Thus, this factor does not weigh in favor of release.

### D.  The original grounds for Flagg-Garrett's pretrial detention.

As set forth above, Flagg-Garrett has a long criminal history, and we previously determined that he is a flight risk and a danger to the community.  The COVID-19 pandemic does not change any of that.  Although Flagg-Garrett suggests that he is in danger given the pandemic if he remains incarcerated, such a danger generally does not bear on whether if released, he would be a flight risk or a danger to the community. *Cf. Clark*, 2020 WL 1446895, at \*3 ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community.  The risk of harm *to the defendant* does not usually bear on this analysis." (italics in original)).  And we cannot say that Flagg-Garrett is not a flight risk or a danger to the community given the offenses with which he is charged and his criminal history.

Further, although Flagg-Garrett asserts that he is willing to submit to home confinement with location monitoring, such monitoring, assuming it is available,

17

"may offer useful information about where he is, [but] it provides little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his involvement (directly or through confederates) in the [crimes with which he is charged] without detection." *United States v. Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020).

The fact that Flagg-Garrett is a flight risk and a danger to the community weighs strongly against release.

In sum, COVID-19 poses a threat to all members of society, including Flagg-Garrett. "And the Court is sensitive to the special risks that COVID-19 poses to incarcerated persons." *United States v. Wilson*, No. 19-cr-20112-7, 2020 WL 1543547, at *3 (E.D. Mich. Mar. 26, 2020). "In an appropriate case, the circumstances of the COVID-19 pandemic, and the pandemic's impact on a particular prisoner in a particular facility, could perhaps tip the balance in favor of pretrial release." *Id.* But Flagg-Garrett has not shown that under the circumstances he faces, the COVID-19 pandemic is a compelling reason for his release.[2]

---

[2] 18 U.S.C. § 3142(i) also allows temporary release if such release is necessary for the preparation of the person's defense. Here, Flagg-Garrett does not suggest that his release is necessary for the preparation of his defense. Moreover, "there is nothing unique about his situation—as opposed to all detained defendants who must assist in their defense within the limits of pretrial custody—that would make temporary release for trial preparations 'necessary' here." *United States v. Villegas*, No. 2:19-CR-568-AB, 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020).

## IV.  Order.

Based on the foregoing, Flagg-Garrett's motion for review of his detention

order (*doc. 19*) is **DENIED**.  An appropriate order will follow.


*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge